UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-643-RJC-DCK

| | |
|---|---|
| SENSORRX, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| ELI LILLY AND COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**THIS MATTER** comes before the Court on Eli Lilly and Company's ("Eli Lilly") Motion for Summary Judgment, (Doc. No. 96); SensorRx Inc.'s ("SensorRx") Response, (Doc. Nos. 111, 130); Eli Lilly's Reply, (Doc. No. 135); and related pleadings and exhibits. For the reasons stated below, the Court will grant the Motion for Summary Judgment.

I. BACKGROUND

According to the Amended Complaint, SensorRx, a corporation based in Charlotte, North Carolina, began developing a mobile phone application called MigrnX in 2015 to assist patients with tracking and treating migraines. (Doc. No. 36 at ¶¶ 1, 11). Eli Lilly, a corporation based in Indianapolis, Indiana, was also developing a migraine application called Vega Migraine and expressed interest in entering a potential partnership and investment in SensorRx in 2018. (Id. at ¶¶ 2, 12, 38).

After preliminary conference calls, email exchanges, and a meeting at an

1

industry conference, Eli Lilly and SensorRx agreed to meet in Indianapolis on January 31, 2019, to explore partnership opportunities and demonstrate MigrnX. (Id. at ¶ 51). The parties executed a Mutual Confidentiality Agreement before the meeting began. (Id. at ¶ 52; Doc. No. 96-27: Ex. Z). During the meeting, Eli Lilly informed SensorRx about Vega Migraine and SensorRx provided materials about MigrnX. (Id. at ¶¶ 52, 53).

The parties exchanged a term sheet on March 21, 2019, and entered a due diligence period. (Id. at ¶ 68). As part of that process, SensorRx provided confidential information acquired through the development and implementation of MigrnX. (Id. at ¶¶ 70-72). On May 22, 2019, Eli Lilly presented a demonstration of Vega Migraine to SensorRx's technology chief who "was stunned at how similar Vega Migraine had become to MigrnX." (Id. at ¶ 87). On May 28, 2019, Eli Lilly informed SensorRx that it was terminating due diligence and would not pursue partnership, but instead would continue developing Vega Migraine. (Id. at ¶ 95). Eli Lilly launched its application in the Apple App Store on November 5, 2019. (Id. at ¶ 96).

On November 13, 2019, Eli Lilly filed a Complaint against SensorRx in the United States District Court for the Southern District of Indiana, seeking declaratory judgments related to alleged trade secret misappropriation and breach of contract. (S.D. Ind. Case No. 1:19-cv-4550, Doc. No. 1). The Indiana case was transferred to this District on June 19, 2020, upon a finding that it was an improper anticipatory filing. (W.D.N.C. Case No. 3:20-cv-351, Doc. No. 65). This Court then dismissed it for the same reason. (Id., Doc. No. 94: Order at 4).

Meanwhile, SensorRx initiated this action with the filing of a Complaint in this District on November 22, 2019. (Doc. No. 1). On July 20, 2020, SensorRx filed an Amended Complaint asserting causes of action for: (1) Unfair and Deceptive Practices in Violation of N.C. Gen. Stat. § 75-1.1, et seq.; (2) Fraud/Fraudulent Concealment; (3) Fraudulent Inducement; and (4) Unjust Enrichment. (Doc. No. 36 at 27-32). SensorRx seeks damages and injunctive relief to prohibit Eli Lilly from "further using SensorRx's confidential information," including removing Vega Migraine from the Apple App Store. (Id. at 32-33). In its Answer, Eli Lilly asserted a counterclaim seeking a declaratory judgment that it did not breach the Mutual Confidentiality Agreement. (Doc. No. 76 at 56-57).

Eli Lilly moved to dismiss the Amended Complaint, arguing, in part, that North Carolina choice-of-law jurisprudence requires the application of Indiana law, which preempts SensorRx's claims. (Doc. No. 45: Motion at 1). That motion was denied without prejudice pending the completion of discovery. (Doc. No. 72: Memorandum and Recommendation; Doc. No. 73: Order). At the completion of discovery, Eli Lilly filed the instant Motion for Summary Judgment, (Doc. No. 94), which has been fully briefed and argued before the Court.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

3

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). "The burden on the moving party may be discharged by 'showing' . . . an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal citations omitted). The mere argued existence of a factual dispute does not defeat an otherwise properly

4

supported motion. Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50.

## III. DISCUSSION

### A. Subject Matter Jurisdiction

SensorRx, a Delaware corporation with its principal place of business in Charlotte, North Carolina, alleges that Eli Lilly, an Indiana corporation with its principal place of business in Indianapolis, Indiana, misappropriated SensorRx's confidential business information to develop its own competing mobile phone application. (Doc. No. 36: Amended Complaint at 4). Accordingly, the parties agree that this Court has jurisdiction under the general diversity statute, 28 U.S.C. § 1332(a). (Id.; Doc. No. 76: Answer at ¶ 14).

### B. North Carolina Choice of Law

"A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits." Perini/Tompkins Joint Venture v. Ace Am. Ins. Co., 738 F.3d 95, 100 (4th Cir. 2013). This Court sits in North Carolina, and, therefore, must apply this state's choice-of-law doctrine.

The North Carolina Supreme Court has held that its jurisprudence favors the lex loci delecti commissi (lex loci) test in cases involving tort or tort-like claims. SciGrip v. Osae, 838 S.E.2d 334, 343 (N.C. 2020) (citing Boudreau v. Baughman, 368 S.E.2d 849, 853-54 (N.C. 1988)). "According to the lex loci test, the substantive law of the state 'where the injury or harm was sustained or suffered,' which is, ordinarily, 'the state where the last event necessary to make the actor liable or the last event

5

required to constitute the tort takes place,' applies." Id. (quoting Harco Nat'l Ins. Co. v. Grant Thornton LLP, 698 S.E.2d 719, 724 (N.C. Ct. App. 2010) (quoting 16 Am Jur. 2d Conflict of Laws § 109 (2009)). The parties agree that lex loci is the appropriate choice-of-law test, but differ on its application to the claims and facts in this case. (Doc. No. 96-1: Memorandum at 16-17; Doc. No. 111: Response at 21).

1. Unfair and Deceptive Trade Practices

SensorRx's first claim for relief alleges that Eli Lilly committed unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, et seq. (Doc. No. 36: Amended Complaint at 27-28). Specifically, SensorRx charges that Eli Lilly acquired SensorRx's confidential business information under the guise of engaging in business negotiations to develop its own competing application. (Id. at ¶ 123). SensorRx argues that it felt injury in North Carolina because it did not receive any payment for its valuable knowledge and information. (Doc. No. 130: Response at 23; Doc. No. 147: Tr. at 64).

North Carolina courts have applied lex loci to actions under § 75-1.1 and held the law of the state where the last act occurred giving rise to a party's injury governs. United Virginia Bank v. Air-Lift Associates, Inc., 339 S.E.2d 90, 94 (N.C. Ct. App. 1986) (citing Lloyd v. Carnation, 301 S.E.2d 414, 418 (N.C. Ct. App. 1983)). Courts in North Carolina and this District have been critical of decisions simply applying the law of the state where corporate headquarters are located and economic injuries are subsequently felt. Harco, 698 S.E.2d at 725-26 (citing United Dominion Industries, Inc. v. Overhead Door Corp., 762 F. Supp. 126, 130-31 (W.D.N.C. 1991)). Rather, a

6

court must determine the state where the plaintiff "actually suffered harm," Harco, 698 S.E.2d at 726, "which is, ordinarily, the state where the last event necessary to make the actor liable" takes place, Environmental Holdings Group LLC v. Finch, 21 CVS 14019, 2022 WL 1538787, at *4 (N.C. Bus. Ct. May 16, 2022) (quoting SciGrip, 838 S.E.2d at 343).

As detailed above, the harm alleged by SensorRx in its UDTPA claim was the deceptive acquisition and use of its confidential business information. After discovery, SensorRx has not shown any last act or event in North Carolina making Eli Lilly liable under § 75-1.1. (Doc. No. 130: Response at 5-20 (Statement of the Facts)). In contrast, the team responsible for the development of Eli Lilly's application was based in Indiana. (Doc. No. 96-2: Rao-Mirmira Dep. Tr. at 5). Alexander Dzeda, SensorRx's Chief Technology Officer, discovered that its application was being used by individuals at Eli Lilly's headquarters in Indiana between November 2018 and October 2019. (Doc. No. 119: Dzeda Dec. ¶ 2; Doc. No. 119-1: Ex. A). Dzeda was shown an updated version of Eli Lilly's application at a meeting in Indiana in May 2019. (Doc. No. 119: Dzeda Dec. ¶ 10). He opined that it had undergone "huge change" and followed the approach that SensorRx had shown them. (Id.).

In the circumstances of this case, North Carolina's lex loci test requires any claim based on unfair and deceptive conduct to be brought under Indiana law; therefore, SensorRx's first cause of action under N.C. Gen. Stat. § 75-1.1, et seq. will be dismissed. Accord 3A Composites USA, Inc. v. United Industries, Inc., 5:14-cv-

7

5147, 2015 WL 5437119, at *3-4 (W.D. Ark. Sept. 15, 2015) (dismissing North Carolina UDTPA claim where alleged acts of misappropriation and use of trade secrets took place in Arkansas and plaintiff felt loss from that conduct in North Carolina).

        2.     Fraud/Fraudulent Concealment and Inducement

SensorRx's second and third claims for relief charge that Eli Lilly fraudulently concealed material facts and fraudulently induced SensorRx to disclose confidential information that Eli Lilly intended to use in further development of its competing application, Vega Migraine. (Doc. No. 36: Amended Complaint at 28-31). The lex loci test addressed above applies to cases with tort claims. SciGrip, 838 S.E.2d at 343. However, "[t]he 'last act' for a fraud claim is the reasonable reliance on the false representation which causes the injury." M-Tek Kiosk, Inc. v. Clayon, 1:15-cv-866, 2016 WL 2997505, at *12 (M.D.N.C. May 23, 2016) (quoting Jordan v. Shaw Industries, Inc., 131 F.3d 134, at *3 (4th Cir. 1997) (unpublished) (internal quotation marks omitted)). Thus, a court must determine where a plaintiff was when it reasonably relied on a defendant's representations.

The pivotal event in this case took place on January 31, 2019, when the parties met in Indianapolis, Indiana, and executed the Mutual Confidentiality Agreement. (Doc. No. 96-27: Ex. Z). Eli Lilly had not previously disclosed it was developing a competing application, but an Eli Lilly executive mentioned Vega Migraine at the following meeting, representing it was not very far along. (Doc. No. 130: Response at 4-5). According to the Amended Complaint:

> SensorRx relied upon the representations in the mutual confidentiality agreement and Eli Lilly's oral assurances that Vega Migraine was not very far along in terms of development in deciding to continue with the business negotiations, including providing information and documents at the January 31 meeting.

(Doc. No. 36 at ¶ 54). SensorRx alleges Eli Lilly executives had no intent to abide by the agreement, but rather intended to provide SensorRx's confidential information to the Vega Migraine development team. (Id. at ¶ 3). Therefore, Indiana law governs SensorRx's claims of fraud/fraudulent concealment and fraudulent inducement.

### 3. Unjust Enrichment

SensorRx asserts unjust enrichment as its final claim for relief. (Id. at 32). The law imposes a claim where there is not a contract to prevent unjust enrichment of one party at the expense of another. Booe v. Shadrick, 369 S.E.2d 554, 555-56 (N.C. 1988). "In order to recover on a claim of unjust enrichment, a party must prove that it conferred a benefit on another party, that the other party consciously accepted the benefit, and that the benefit was not conferred gratuitously or by an interference in the affairs of the other party." Southeastern Shelter Corp. v. BTU, Inc., 572 S.E.2d 200, 206 (N.C. Ct. App. 2002). The lex loci test applies to such claims. Arabian American Oil Co. v. Anderson, 873 F.2d 1437, at *1 (4th Cir. 1989) (unpublished) (citing Boudreau v. Baughman, 368 S.E.2d 849 (N.C. 1988)).

Here, the last act triggering liability alleged in the Amended Complaint is Eli Lilly's use of SensorRx's confidential information to develop Vega Migraine without paying for it, decreasing Eli Lilly's costs in developing the competing application and generating revenue. (Doc. No. 36 at 32). As detailed above, any utilization of

9

SensorRx's confidential information would have occurred in Indiana, as would the receipt of any benefit from the information. Accordingly, Indiana law controls SensorRx's claim of unjust enrichment.

   C.   Preemption by Indiana's Uniform Trade Secrets Act

Having decided that North Carolina choice-of-law jurisprudence requires the application of Indiana law to SensorRx's claims of fraud/fraudulent concealment, fraudulent inducement, and unjust enrichment, the Court must consider whether they are viable in light of Indiana's Uniform Trade Secrets Act. Indiana adopted the Uniform Trade Secrets Act (UTSA) in 1982 substantially as promulgated by the National Conference of Commissioners on Uniform State Laws.[1] Amoco Production Co. v. Laird, 662 N.E.2d 912, 917 (Ind. 1993). To accomplish the Act's general purpose of making the law regarding misappropriation of trade secrets uniform among the adopting jurisdictions, Indiana Code § 24-2-3-1(c) states that the IUSTA "displaces all conflicting law of this state pertaining to the misappropriation of trade secrets, except contract law and criminal law." This "preemption provision" is stronger than the model statute's at the time and is designed to cover duties imposed by law. AGS Captial Corp., Inc. v. Product Action Intern., LLC, 884 N.E.2d 294, 306-07 (Ind. Ct. App. 2008) (citing Infinity Products, Inc. v. Quandt, 810 N.E.2d 1028, 1034 (Ind. 2004)). Thus, there is "a single cause of action for misappropriation of a trade secret." BlueEarth Biofuels, LLC v. Hawaiian Elec. Co., Inc., 235 P.3d 310, 318 (2010) (cited

---

[1] Indiana recognizes decisions by other adopting jurisdictions as precedential. Amoco, 662 N.E.2d at 918.

10

with approval in HDNet LLC v. North American Boxing Council, 972 N.E.2d 920, 924 (Ind. Ct. App. 2012)).

To decide whether a plaintiff's claim is preempted or displaced by the Act, courts apply a standard of proof which has been described as:

> a "same proof" standard under which a claim will be preempted when it necessarily rises or falls based on whether the defendant is found to have "misappropriated" a "trade secret" as those two terms are defined in the UTSA. Stated another way, if proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it.

HDNet, 972 N.E.2d at 926 n. 4 (quoting Hauck Mfg. Co. v. Astec Industries, Inc., 375 F. Supp. 2d 649, 658 (E.D. Tenn. 2004)). The Supreme Court of Hawai'i has recognized that the majority of courts applying the UTSA examine "the factual allegations underlying each claim to determine whether a claim, whatever its label, is based upon misappropriation of a trade secret."[2] BlueEarth Biofuels, LLC, 235 P.3d at 316-17).

Here, the causes of action in the Amended Complaint "rise or fall" and are "based" on Eli Lilly's alleged misappropriation and use of SensorRx's confidential business information to develop its competing application. (Doc. No. 36 at 27-32). SensorRx claims Eli Lilly fraudulently misrepresented its intentions to enter a business relationship and concealed its use of SensorRx's information. (Id. ¶¶ 130, 132, 141 (Fraud/Fraudulent Concealment)). SensorRx claims Eli Lilly caused it to

---

[2] That court also found the Act protects "confidential and/or commercially valuable information" whether or not meets the statutory definition of "trade secret." BlueEarth, 235 P.3d at 324.

11

share confidential information for Eli Lilly's use in developing and marketing its own application. (Id. ¶¶ 148, 149 (Fraudulent Inducement)). SensorRx claims Eli Lilly decreased its costs and generated revenue through its competing application utilizing SensorRx's confidential information. (Id. ¶ 156 (Unjust Enrichment)).

At oral argument, however, counsel for SensorRx stated that this case does not involve misappropriation because SensorRx "had no problem" with Eli Lilly using its information if they paid for it. (Doc. No. 147: Tr. at 59). Yet, in its Answer to Eli Lilly's counterclaim, SensorRx asserted that "Lilly's actions constituting a misuse of SensorRx's confidential information breached the Mutual Confidentiality Agreement" and that "Lilly fraudulently induced SensorRx" to enter the Agreement, with which "Lilly had no intent to comply." (Doc. No. 78 at ¶ 6). "Misappropriation" under the Indiana statute involves the acquisition of protected information by "improper means." Indiana Code § 24-2-3-2. "Improper means" includes theft and misrepresentation. Id. Accordingly, whether Eli Lilly used SensorRx's confidential information without paying for it, as stated in oral argument, or fraudulently misrepresented that the confidential information would not be used to develop its competing application, as alleged in the Amended Complaint, the factual allegations bring this case squarely under the IUTSA.

The absence of a trade secrets cause of action is irrelevant because SensorRx is "confined to the single cause of action provided by the UTSA" based on its allegations of theft or misuse of its "ideas, data, or other commercially valuable

12

information."[3] Hauck, 375 F. Supp. 2d at 659 (finding preemption of unjust enrichment claim); see also Infinity Headwear & Apparel, LLC v. Coughlin, 447 S.W.3d 138, 142-43 (Ark. Ct. App. 2014) (tort claim preempted even though trade secrets claim was abandoned in amended complaint). Accordingly, SensorRx's fraud/fraudulent concealment, fraudulent inducement, and unjust enrichment causes of action are preempted by the IUTSA and must be dismissed. Accord BlueEarth, 235 P.3d at 323 (tort claims based on misappropriation of trade secrets are displaced by UTSA).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Eli Lilly's Motion to for Summary Judgment, (Doc. No. 96), is **GRANTED**;
2. SensorRx's Amended Complaint, (Doc. No. 36), is **DISMISSED** in its entirety with prejudice; and
3. Eli Lilly's Counterclaim, (Doc. No. 76), is **MOOT**.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

Signed: September 26, 2022

Robert J. Conrad, Jr.
United States District Judge

---

[3] SensorRx's original Complaint included a fifth claim for relief for Misappropriation of Trade Secrets under N.C. Gen. Stat. §§ 66-152, et seq. and a sixth claim for relief under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836. (Doc. No. 1 at 32-38).